The court will move to case number 5 which is appeal 22-1389. This is Kuhn vs. Kijikazi. Mr. Forbes is present in the courtroom. Mr. Montenegro, can you hear us? Yes, Your Honor. Thank you. Very good. Mr. Montenegro is appearing via Zoom. We'll begin with oral argument from the appellant, Mr. Forbes. Thank you, Your Honor. I finished my reply brief in this matter like the day before I got the Milham decision. Why don't we begin there. Tell us how this case may... Tell us if this case differs and if so, how. This case is about as identical to Milham as you can get. Down to the number of jobs, right? Even the judge, the V.E., the only difference is that I'm not the administrative attorney in each one. Otherwise, we probably would have won it on methodology before we ever got to this point. But nevertheless, Milham, the date for panel re-hearing is on the 19th, I believe, December 19th. And petition for certiorari is like February 4th, something like that. And whether the Seventh Circuit would give my client a favorable on the issues that are probably most well-developed so far in my reply brief would not matter because Social Security has a non-acquiescence policy, and it would help my client, but it won't help solve the problem because the Social Security administrative law judge nationwide will continue to do what they do because of non-acquiescence. The only way to fix this arbitrary space is to go up one more level. And so... So do you... I just want to make sure I understand your argument. Do you agree that if Milham stands, that your client cannot prevail on your arguments with respect to a set standard in the application of Salius? It would be inconsistent. Yes. Milham is, at this point, is controlling law. We appreciate your candor. Yeah. It's also inchoate law because it's early. Right. But I would... The Chavez case used language that says it's got to be reasoned and principled. That's the methodology used to arrive at the numbers per occupation. And it seems to me that deciding the level of significance, and it is a level because significance modifies number, and the only sensible definition is that significance means relatively large in quantity. The... Can I ask you a question on that? Yes. Okay. Here's... And I'm asking this because you've got a lot of experience, Mr. Forbes, in this area. This is what you do. That's right. Okay. I appreciate it. And when I read your briefs, I get the point you're making about we need to define significance. What is substantial that way? But I keep thinking, I think Mr. Forbes is saying more than this. You're saying more than that. When you put the numerator of whatever the job is in question over the denominator of all jobs in the economy, well, by definition, that's always going to be minuscule. It's always going to be insubstantial in the way that the world works right now. So I think to myself, that's not the argument Mr. Forbes is making. Here's what... That's the argument that I really have been making. Yeah. Go for it. It's the commissioner's burden at step five to use reasonable and principled standards to apply it to what is significant. I can come up with 10 economic reasons or standards myself to fix this area of law. But in each individual case, that's not my job, that's their job. And that's why I've argued, and I understand past precedent looks like, well, it's always, you know, the jobs are higher and I understand the logic of Milham. But in each case, they have to prove the level of significance. And right now... So is your point that when they say there are 47,000 document preparer jobs, for example, in the United States, just saying that doesn't prove whether that's a substantial number? Right. And the vocational expert is not tasked with presenting a significant number. That's the vocational expert's handbook, which I referenced in the reply brief, says that. So the question is, how do we know what the level of significance is? Do you ever find yourself in these proceedings, Mr. Forbes, saying with respect to... You know, some of these job descriptions are pretty esoteric, as you know. Do you ever find yourself saying to an ALJ or a VE, look, my client lives in Angola, Indiana. There's nowhere close to Angola, Indiana that, you know, you can be a walnut sorter or some of these other really... Right. You know, do you ever find yourself making arguments like that? That's kind of... I think that's the Browning case where those kind of travel or proximity issues aren't at play anymore. So, yeah, I mean, you think that, but I don't think that's... Because I don't know. I'm trying to figure out what the substance of your position is because I know you have clients, right? You get these VE estimates. Right. And I'm trying to envision, are you standing there in front of the ALJ saying, Judge, there's no reality to that for my client? Those jobs don't exist in Northeast Indiana or wherever. They may exist in... Maybe they exist in Texas or Florida, but that doesn't make any bit of a difference for Mrs. Smith. If I were the judge or the commissioner trying to prove, I'd ask the vocational expert, what's the dispersion ratio of these jobs throughout the country? And maybe that provides some information. But that's not my job to ask that question. It's their job to prove it. But cross-examination along those lines could go directly toward whether or not they've proven it. As an advocate, in this particular set at step five, I don't cross-examine them. I don't think they haven't met their burden. And if all they've done is presented a number and said it's significant and there's no way the level can be reviewed, why would I do anything else? I'm not the bureaucrat. I'm not the policymaker. No, but you are in a position, are you not, in keeping with what Judge St. Eve is saying, to say, Judge, I've got one question for the V.E. You know, sir, do you have any idea whether there are jobs as document preparers within Northeast Indiana or 100 miles of Northeast Indiana? Yeah, I could ask that question. And I know the answers to pretty much those questions. Which is what? I don't have any idea or no? I don't know? Well, for example, a long time we had a – I'm going to go way over my time. I'm happy to stay here and talk, but I would – just so I don't forget. I think the strongest argument away from the Milham issues is the lumbar spine close period. Okay? So back to you. It used to be they'd talk about parking lot attendants. Well, I know every parking lot attendant place in Fort Wayne. You know, that's where I live close to. And I know how many of them got changed from an actual person and now is automatic. And so we can talk about obsolescence with questions like that. But what I usually do now to pin them down is say in your testimony, in response to the hypotheticals, have you provided any testimony that would establish the level of significance of national jobs? And they will answer – the V.E. will usually answer no. Or the judge will interrupt me and say that's not their job, that's mine. That's the situation. I've reserved 20 seconds. Very good. Thank you, Mr. Forbes. You're welcome. Mr. Montenegro, we'll move now to you for a pally argument. Thank you, Your Honor. Good morning. My name is Leo Montenegro, appearing for the defendant appellee, the Acting Commissioner of Social Security. I submit at the outset that Milham controls the issue of significant numbers of jobs in this case. I think Claimant's counsel has conceded this. The issues raised are the same. Claimant is arguing that the ALJ didn't carry the burden of identifying jobs, but the claimant did – I mean, I'm sorry, the ALJ did. By obtaining evidence from a vocational expert, the heart of Claimant's argument really is just that Claimant disagrees that the number of jobs here are significant. Claimant is using a different metric to argue that the number of jobs here is actually not significant. And Claimant is also arguing that there should be a different standard and that the standard he's proposing would show that there isn't a significant number of jobs. This was already addressed in Milham. There's really no difference to those legal arguments between this case and Milham. In this case, the ALJ questioned the vocational expert about the functional limitations, which Claimant did not question. Claimant did take the opportunity to question the vocational expert about possible other functional limitations, but the vocational expert responded to the ALJ. The ALJ relied on the vocational expert's testimony, and that should be substantial evidence, according to ALJ's finding, that there was a significant number of jobs existing in the national economy compatible with the Claimant's functional limitations. Claimant hasn't shown otherwise. Claimant had the opportunity to ask questions at the administrative hearing and to also raise these issues after the ALJ's decision, before Social Security's Appeals Council, before the district court, and before this court, to show that the ALJ's findings were not supported by substantial evidence. But the arguments raised by Claimant, as I said, have been addressed by Milham, and I think that's dispositive here as to that issue. As to the other argument Claimant has raised about closed periods of disability, Claimant is arguing that if she was not disabled, at least for the entire period of time originally alleged, that she must have been disabled for at least portions of those times, that those are closed periods of disability, as they're described. Essentially, Claimant is saying that she had back surgery in April 2018, and she must have been disabled from March 2018 through March 2019, and similarly, she had psoriasis, or psoriatic arthritis, from August 2018 through November 2019. But Claimant has not pointed to any evidence of disabling functional limitations resulting from those medical problems. Claimant is just making the bare assertion that she must have been disabled during these times because of the fact of these medical problems. No one is questioning that she had these medical problems. The ultimate issue here is whether they were resulted in disabling functional limitations, and there's just no evidence of that. In comparison, the ALJ's findings were based on the medical evidence, medical opinion evidence to be specific. The ALJ's assessment of functional limitations based on that medical evidence were presented to the vocational expert who, again, identified jobs, the numbers of jobs that the ALJ found to be significant, such that the ALJ found that the Claimant was not disabled during the entire period or any portion of that period, really. Thank you, Mr. Montenegro. Anything further? I don't know. There are no further questions. That's all I have for now. Thank you. Mr. Forbes, let's give you a minute for rebuttal. Thank you. It's not just one surgery. It's problems that made her leave employment that she consistently held. There's a back surgery in April. There's a back surgery in August. Certainly, a person has a lot of reasonable time to recover, and all I'm saying is that, well, the MRI in March 27, 2019, looked better, but even her doctors didn't think she was better. Her primary care doctor said something like, chronic midline low back pain with right side sciatica, and referred her to a pain clinic. Her neurologist, January 3, 2019, noted a limp. So my point is, if you assume that she reached the best that she could after that year, about March 19, 2019, then that's the earliest that she could have done sedentary sit-stand with the need for cane for short ambulatory trips. If they can get away with their burden on step five of just saying, wow, the numbers look big, certainly this gets us a close period at step, fulfilling all of our duties. And so, anyways, thank you very much. Thank you, Mr. Forbes. Thank you, Mr. Montenegro. The case will be taken under advisement.